23-1228 Eastern Arkansas, Entergy Arkansas v. Arkansas Electric Energy Consumers, Inc. Mr. Tinsley? May it please the court, thank you to the honorable court for giving us this opportunity to argue our position in this matter. I'd like to begin by discussing the applicable standard of review insofar as it's somewhat disputed. The normal standard of review on the denial of an intervention motion is a de novo review, but Entergy asserts in this matter that this court should review the lower court's decision based on an abuse of discretion insofar as Entergy invites this court to impute a finding of untimeliness to the district court's order. We respectfully urge this court to decline that invitation because the lower court's order did not state a basis for the denial of our motion to intervene in this matter whatsoever, and in fact the lower court's order appears far more whimsical than it is reasoned insofar as the very same order says that the matter had just been assigned to the district judge only a few hours before he ruled on our motion. Now that happened because of a series of recusals, but it is difficult if not impossible to conclude that the district court engaged in a studied and careful analysis of the complicated issues presented by this appeal in a matter of hours, especially when the same... Can I ask a quick preliminary question? Yes, Your Honor. I think you sought permissive intervention as well, but I didn't see anything in your briefs about that. That's correct, Your Honor. We haven't been pursuing that argument. You've abandoned that? My understanding is that appeal as of right is appealable on an interlocutory basis. I'm not sure that permissive appeal is appealable on an interlocutory basis, but we are still seeking that in the alternative, although we may not have fully briefed that. I wouldn't characterize it as abandoned. It's just that we didn't... Maybe we didn't realize that we could seek that on an interlocutory basis, Your Honor. So again, back to the standard of review, Intergy actually asks this court to apply a more deferential standard of review to an order that completely lacks reasoning whatsoever. I mean, it's totally illogical to say, well, since the district court didn't specify any reasoning for denying the motion, we're going to actually insulate it from review by the higher court. I mean, the reality is that when you have an order that doesn't explain why the lower court acted in the manner it did, this court should scrutinize it more heavily than an order that is carefully reasoned and studied, especially where the order that we're talking about disposed of umpteen pretrial motions in this matter  Now, Intergy says this court could impute that the order found that our intervention was untimely because the order invoked the need for expeditious resolution of the case. I've never met a judge that doesn't want expeditious resolution of cases. That's just far too thin of a read for this court to look at that order and say, well, obviously he's basing this ruling on the fact that the motion was untimely. There's just nothing there from which this court could find that that was the basis for the lower court's ruling. Counsel, even assuming that there was no finding of untimeliness, the timeliness of the filing of the motion is still a factor in intervention. Could you address the two-year delay in filing for intervention? Yes, Your Honor. And whether or not that caused prejudice? Yes, Your Honor, I absolutely will. And I actually think that that's the heart of this appeal. So we explained the reasons for our delay in seeking intervention in the briefing filed in the lower court. The client that I represent, Arkansas Electric Energy Consumers, is a small trade association that has about a dozen members. It has limited resources, especially when compared to the litigants that we are up against in this case and others. Our members pay annual dues that range anywhere from $5,000 to $50,000 a year. We do not have the vast resources that our opposing litigant in this matter does, which undoubtedly they're probably using ratepayer funds to fund this litigation. But because of that, we were monitoring the proceedings in the district court. A similar lawsuit was brought by Intergy back in 2012, and it was dismissed by the district judge based on a finding of a lack of subject matter jurisdiction and a lack of standing on the part of Intergy to bring the action. So we were monitoring this litigation. We were aware of this litigation, but we had not made the decision to seek intervention in the litigation while the matter languished for over 18 months while a motion to dismiss was pending. And we studied the motion to dismiss and Intergy's response to it, and we thought that there was some likelihood that the matter could be dismissed. After the matter was not dismissed, which, again, that didn't happen for, I think, 18 months, and almost no substantive action was taken in the case in that period of time, we made the recommendation to the AEEC board, and by we I mean the attorneys that work for AEEC, that they should seek intervention because apparently the district court was going to permit the litigation to play out. Now, at the time that that decision was made, it also took us some time to get our pleadings prepared and filed once we were able to obtain authorization by the AEEC board to intervene, and that's why we weren't able to get our motion filed until a few months after the motion to dismiss had actually been denied. But again, I would point the court to the fact that this is a multi-factor test, and the reason for the delay and the delay itself are just one of a series of factors that this court has to consider. The two factors that I would consider are the heaviest or weightiest factors that this court needs to look at are, you know, whether or not there was prejudice to the existing parties. In this case, there wasn't any. Intergy can't point to any, especially not the type of prejudice that this court has to consider, which is prejudice that is caused by the delay in seeking intervention and not prejudice that just exists because AEEC is a party. I hope and I presume that our status as a party would be extremely prejudicial to Intergy. After all, we beat them in the administrative proceeding that underlies this litigation. But that's not the type of prejudice with which this court should be concerned, and extending the duration of the litigation is not the type of prejudice that this court need concern itself about either, and that's from the union electric seat. Let me ask you this. Why doesn't the Public Service Commission adequately represent your clients' interests, given that they're supposed to represent the public at large? Well, I think that that's a misconstruction of the Arkansas statutes at issue. They do not have a duty to represent all Arkansas rate payers. Their duty is to balance the interests of the utility with the interests of the rate payers. By statute, the Arkansas Attorney General is charged with the duty to represent Arkansas rate payers, and they're not a party to this action. But in my opinion, and obviously Mr. Lane is going to talk to the court about this, the amicus in this case appears to have conceded that it did not adequately represent AEC's interests in this matter because the court conducted a bench trial, and the Public Service Commission made the decision not to present any expert testimony in support of its order in that trial. I can tell you that had AEC been participating in that bench trial, we would have presented expert testimony in support of the order, and we would not have permitted what the APSC characterized as, quote, a lopsided and slanted bench trial. Councilman, what makes your client different than any other rate payer? Our client is different from other rate payers because we use such vast volumes of electricity that we are in a different rate class from other rate payers. Our load profiles are so distinct from other rate payers that we are literally specified and separated out from other rate payers in the rate design and cost allocation and other methods underlying the design of rates. Do you have any support for the idea that that quantity of use separates you from just a traditional rate payer? The whole theory of rate making is that you have to group similarly situated rate payers together in order to establish rates for those rate payers because all of rate making is based on something called cost of service. The cost of service for a larger rate payer differs from the cost of service for a smaller rate payer. In this case, there's an allocation regarding the bandwidth payments that were refunded, and the allocation underlying those bandwidth payments was based upon a cost allocation that we litigated in the administrative proceeding, and we're also seeking to defend the cost allocation underlying those refunds. On those refunds, the bandwidth refunds, are your clients then, is it your concern that your clients are going to carry a heavier load or percentage of that? Yes, ma'am, that is a possibility. I mean, not just by quantity. I'm sorry to interrupt. But not just by quantity, but by proportionality? Correct, Your Honor. And again, the status quo is that we've already been refunded that money, but if Intergy were to prevail in this proceeding, it would be next to impossible to restore the status quo. I don't want to steal from the time I've already conceded to Mr. Lane, and I think my time is up. Very well. Thank you, Mr. Tinsley. Mr. Lane, the court will hear from you. Thank you for allowing me to appear. I want to turn to Judge Grass's question about timing. And I'd like to point out that the final scheduling order, which issued on April 13th, 2022, allowed for additional parties to be introduced into the case until August 22nd. That was the deadline. The intervention was filed July 1, which is seven weeks before that deadline. Also, I believe that the August 22nd deadline suggests that the court, any additional parties would not disrupt the trial date or any of the trial proceedings. So I think that's an important factor. The other thing that I would like to talk about, because Intergy has indicated that all the written discovery was finalized before the intervention was filed. That's true in one sense, but in a more important sense, the expert testimony was not due until September 16th, and most of the discovery was after that date. Once the expert reports came in, we deposed the experts during November and December. Mr. Lane, I appreciate your explanation. I think it's better than what was given by Mr. Tinsley before, but I think your primary purpose here is to tell us why the APSC doesn't sufficiently represent the interests of the potential intervener. I'm happy to do that, Judge Gruden. As Mr. Tinsley said, we are the decision maker. We look at the facts, and we have to decide based on all the information presented. If this case, let's go to the situation, if this case is reversed, then what will happen is the district court can't decide what the proper rate making for return of these monies, and the case would have to go back to the Arkansas Public Service Commission. In that situation, AEC, as they did in the prior proceeding, would be in the position of an adversary to Entergy, and they also have a financial stake in the outcome, where, of course, we don't have a financial stake in the outcome. We would just decide it based on the evidence that was presented. I think a different point, but to me, very important for the Arkansas Commission, is we have a very strong institutional bias in favor of a district court not re-litigating our decisions. First of all, under the statute, which is Arkansas Code 23-2-423, you have to... Let me interrupt you, because your time is short. Doesn't the APSC, by statute, have a duty to represent and to assure customers have access to affordable electricity? Aren't they just a customer? Therefore, why wouldn't you be perfectly capable of representing their interests? First of all, Judge Gruden, as Mr. Tinsley pointed out, the AG actually has the duty under the statute. It's 23-4-305 to represent all retail rate payers. We don't have that duty. We don't represent anybody in this proceeding. We were the ones that made the decision, and we had to consider both sides of the issue. In the proceeding here, we are defending our decision. We are not defending any particular point of view. Our decision was reached after we considered all sides, just as you would do in any decision, and we came to the conclusion that we did. It's not the same as one party who took a position below, has a position. In the district court, as Mr. Tinsley said, they would put on evidence. We, again, institutionally do not believe, and we believe this very strongly, that the district court should not be allowed to retry our cases and come to a new decision based on new evidence. Mr. Lane, thank you. Your time has expired. Thank you so much, Your Honor. Mr. Weisburst. Thank you, Your Honor. I may please the court. Sanford Weisburst for Entergy Arkansas. I'd like to start with the adequate representation issue, and particularly I want to pick up on a point that Mr. Lane just made. The APSC weighed the various interests at stake, and then they made a decision, and after the decision, their business is defending that decision. In that posture, once we're in the district court, they're defending the decision, and as Mr. Tinsley pointed out, his client won at the APSC. APSC and AEEC are in lockstep in defending that decision. They have the same interest in defending it. There's no longer any balancing of interests going on by the APSC. They are trying to get an affirmance of that decision. That would normally be a very good argument, but here the governmental entity, the Arkansas Public Service Commission, has conceded that they cannot adequately represent the interests of AEEC in their briefs. So isn't that a moot point? Respectfully, Your Honor, Judge Grassley, it does not. And I commend this court to read the First Circuit decision, which we submitted in the 28-J letter, the patch decision. It addresses this precise point, as well as several others that are at issue here. And in that case as well, the Public Service Commission of New Hampshire, the analog to the Arkansas Public Service Commission, went to the court, to the First Circuit, as well as the district court, and said, we can't represent these interveners. We can't represent all of their interests. And the First Circuit said, that's not good enough. We as a court have to independently apply the criteria of Rule 24 and make our own independent decision. And they also found, the First Circuit found, that after the decision had been rendered by the Public Service Commission of New Hampshire, they were just trying to defend it, and they were, as the First Circuit called it, in legal lockstep in defending the federal preemption and constitutional claims. Again, very similar claims that we have here. So you're asking this court to second-guess the decision of the Public Service Commission as to whether they can adequately represent the party? I would say this court should take an independent de novo review and disagree with that position, because it's contradicted by the statute, by the fact that they've already decided. And most importantly, by the fact that we've gone through all these appellate briefs now, as well as the district court briefs, we still have not heard an instance where there's a divergence in what arguments that the APSC versus the AEC would make in this case. And they're asking us, we had a trial, a lengthy three-day trial in district court. They're asking us to do that all over again. And respectfully, I think that's a waste of judicial resources, given that there's no daylight between their positions. Now, if I could turn to Judge Kelly's point about, well, does it matter that they're a particularly big customer? Are there any case law on that? And again, Patch addresses that precise issue. In that case, there was one very large customer, the city of Manchester, New Hampshire, which said, look, we're particularly aggrieved by this appeal, by this challenge to the Public Service Commission. And the First Circuit held that, well, that's just the same interest that any other retail customer has. And I think it's interesting. I didn't hear Mr. Lane, even though we mentioned it in our briefs, or Mr. Tinsley address their statement that they made in a D.C. Circuit brief, which actually arose from one of the same underlying FERC decisions. In that D.C. Circuit brief, they explained to the D.C. Circuit that the APSC represents all ratepayer interests, and we've quoted this in our brief, without the need for any particular customer to intervene, the opposite of what they're saying here. So back to Judge Gross's point, it's not even second-guessing. It's agreeing with what they said in the D.C. Circuit, as opposed to what they said in the Eighth Circuit. Now, let me address a few points about the timeliness issue very briefly. Let me add. The AEEC, the potential intervener here, as I understand it, represents larger industrial and agriculture organizations. First off, is that considered a retail user? Yes. Your Honor, it is. Any customer that actually consumes the electricity, as opposed to selling it to another person who consumes, is a retail customer. Okay. And is there any argument, and I didn't hear it articulated when I asked, but any argument that they will be disproportionately affected by the results of this case, more than any other household customer, so to speak? So it is true that they consume more electricity and that they are in a different retail rate class. There are four classes. I'll just say this very briefly. Residential, which is the mom and pops and the small businesses, small general service, large general service, and lighting. Predominantly, their members are in the large general service category. All of those, however, are retail customers. It's already been decided in Energy Arkansas's last rate case, which is these big cases that are done every so often, that was in 2015, how to divide up the percentages of responsibility among those various classes. I don't think that that issue is presented in this district court case or in this court. To the extent that the Arkansas Commission would modify that, it would be in a future proceeding, and AEC would be able to intervene on that issue. But in this case, in this court, and, again, I don't want to beat a dead horse, but Patch, as well as this court's decision in North Dakota X-Rail Stenogem, says, you have to focus on the particular case in determining whether there's adequate representation. You don't hypothesize some other case where there might be a different balancing of interests. In this case, they are trying to defend the Arkansas Commission's ruling here. There's no litigation about how to divide it up among the rate classes. That was settled from purposes of the district court proceeding. No one raised it, and to the extent it's raised in the future, it will be decided by the Arkansas Commission in the future with presumably AEC's participation because the Arkansas Commission is more liberal than Rule 24 on that note. I'd like to turn briefly to a couple of other points that were raised. Number one, permissive intervention not mentioned in either their opening brief or reply brief in this court. Respectfully, that issue is waived. We're only here now on intervention of right, which we don't think that they meet the standard for. On standard review, I want to clear that up. Adequate representation issue we concede is de novo review. However, it's important to remember that under this court's decision in Chiglo, there's a presumption of adequate representation when it's a government agency acting within its scope of authority, and they have to overcome that. Does that apply when the government concedes the point? I believe it does. The First Circuit held that it does in the Patch case, and, again, in the D.C. Circuit brief, the Arkansas Commission said that they were an adequate representative. On the timeliness issue, that is an abuse of discretion standard under the ACLU of Minnesota case from this court. We respectfully disagree with Mr. Tinsley about the short nature of the district court's decision, meaning that there's not an abuse of discretion standard. He didn't cite any authority that I recall for that proposition. And I think what this court can do in applying the abuse of discretion standard is ask whether the district court's decision on timeliness is within the range of reasonable outcomes. However, even if it were de novo review on timeliness, we respectfully submit that the application was untimely, and I think this court can- How can that be when there's still seven weeks to add parties? So this court actually addressed that same sort of issue in the Mule Lock case. There also, in the scheduling order, there was a date for amendment or addition of parties, and this court said, well, it's sort of ambiguous whether that applies to the existing parties to the case, adding new parties themselves versus outsiders coming in. This circuit said it's ambiguous, and what we should do in this, given the ambiguities, we should apply the normal factors for timeliness, which, again, are knowledge of the litigation, reason for the delay, how much the litigation has progressed, and finally, prejudice. By the way, on prejudice, under the ACLU of Minnesota case, prejudice is not required to be shown if the other three factors are shown. Counsel, I would like you to address that, though, because something I didn't get a clear understanding of from your brief was just how Energy Arkansas is prejudiced by this intervention. Sure. So, again, although we're not required to show prejudice, I'm happy to address that and show we were prejudiced. And here's why. So two years had passed. We had done written discovery. I think Mr. Lane agreed with that point, that written discovery had been exchanged both by Energy Arkansas to the Arkansas commissioners, as well as vice versa, and both had responded to each other's written discovery. Yes, there was expert discovery later on, but in terms of the written fact discovery, that all took place before AEC even showed up. Now, why – and there was some comment by Mr. Tinsley about, well, they can't complain about their merits of their case being prejudiced. That's not what I'm trying to complain about. I'm trying to complain about delay in the resolution of the district court case. And the problem is they came in, and one of their very first acts, Energy Arkansas and the commissioners had agreed on a summary judgment briefing schedule, and the district court had entered it. One of their very first acts, like four or five days after they moved to intervene, was let's delay the summary judgment schedule, the summary judgment briefing schedule, until the motion for intervention is resolved, so that they knew whether they were in or out. And the problem with delaying summary judgment briefing is that that had the strong potential to delay the trial as well, because the district court might have said, well, I don't have the full briefs on summary judgment, and trial date's getting close. I want to push that back so that I have more time to address the summary judgment motions. That would have been a reasonable course for the district court to take. We were hoping to avoid that, which is why we filed our summary judgment motion as early as we could. And furthermore, once AEC were allowed into the case, if they were, they could have taken additional depositions, put on additional witnesses, and all of those scheduling issues that would be newly introduced by AEC had the strong potential to delay the ultimate resolution of the case. The proper way, setting aside adequate representation, which is an independent ground for affirmance, the proper way to do this would have been for them to intervene before the motion to dismiss was decided, or at least promptly after that, so that we had resolution of who was in and who was out of the case, and we could proceed with discovery efficiently and not delay the trial date. And so that's really where the prejudice is here. But again, prejudice is not strictly required. We think that all the other three factors are clearly in our favor. The length of time, the lack of a reason for their delay, which they didn't put in the district court motion. They didn't put it in the opening brief in this court. We think that that's waived. They don't have a showing on that. I think it's too late to put that in in the reply brief. And finally, there's undisputed knowledge of the litigation. One other point I wanted to make. Mr. Lane stated that the commission's strong institutional bias was for the district court not to allow evidence to challenge the Arkansas Commission's decision. I recognize that that's their bias, but that's not their decision. And district courts across the country, including in this circuit, have allowed evidence in this circumstance. I'd refer this court to the Middle South Energy case involving the Grand Gulf Nuclear Station from the 1980s. It's cited in our brief. There, additional evidence beyond the Arkansas proceeding was allowed. Similarly, in the PPL cases, which ultimately went to the U.S. Supreme Court under the name Hughes v. Talent Energy, there were bench trials following the agency proceeding. It's commonplace for there to be district court proceedings after an agency proceeding. And furthermore, Mr. Lane and the commissioners did, in fact, seek to introduce additional evidence beyond the Arkansas record here. Refer the court to district court docket 75, which was an affidavit of a purported expert named Keith Berry, which they submitted in connection with both opposing Energy Arkansas's summary judgment motion and in support of their own summary judgment motion. The fact that they did not do so at trial was a strategic decision that they made. And under Chiglow and other cases, the fact that there's a difference in strategy between a party and a proposed intervener is not sufficient to support intervention. The question is adequacy of representation based on the interests. If the court has no further questions, I would ask for affirmance and rest on my briefs. Hearing none, thank you, Mr. Weisberg. Thank you. Mr. Tinsley and Mr. Lane, you both used up your time, but we were asking you questions. If you've got one quick point, I'll give you each one minute. So on the adequacy of representation issue, Mr. Weisberg characterizes the decision not to present expert testimony at a brinch trial as strategic. I don't see it that way. I mean, I think that they apparently made the decision that they were going to try to appeal from the district court's to allow new evidence to be presented instead of presenting it themselves, which is certainly not the decision we would have made. We would have, at a minimum, utilized the same expert that we utilized in the administrative proceeding. We wouldn't have permitted the district court's bench trial to be lopsided and slanted as the APSC has conceded it allowed. And so I think in this case, it's undisputed that their representation of our interest was inadequate because we would have presented at least one subject matter expert at the bench trial who would have undermined the foundations of Entergy's arguments. And I appreciate the attention that's been paid to the scheduling order. I think that disposes of the other issue. Thank you very much. Thank you, Mr. Tinsley. Mr. Lane, your one minute. Yes, Your Honor. Thank you. On prejudice, I want to point out that the final scheduling order allowed discovery until November 30th, and we in Entergy then extended discovery until December 30th, which happened without delaying the trial at all. So I don't think that... Remember, you have to look at when the intervention was filed on July 1. If they had been granted intervention within that time period, within even 30 days, I don't think there would have been any prejudice to them with delay of the trial. We extended the dates for almost every motion that was submitted. And as I say, we extended the dates for the discovery without delaying the trial. Thank you, Your Honor. Thank you, Mr. Lane. Counsel, we appreciate your appearance today. Interesting argument, and we'll do our best to issue an opinion in due course.